

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
EVANSTON INSURANCE COMPANY,

      Plaintiff,

  -against-

HARRISON STREET RESIDENCES, LLC and
PAV-LAK CONTRACTING, INC.,

      Defendants.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

18 Civ. 4918 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Evanston Insurance Company brings this action against Defendants Harrison Street Residences, LLC ("HSR") and Pav-Lak Contracting, Inc. ("Pav-Lak") (collectively, "Defendants"), seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. (Compl., ECF No. 1.) Specifically, Plaintiff requests a judgment declaring that there is no coverage under its excess policies because the underlying limits are not exhausted and the insureds breached two conditions of coverage under the Alterra Policy— namely, that (1) the insureds be listed as additional insureds under the Colony Policy, and (2) their coverage under the Colony Policy not be more restrictive than their coverage under the excess policies. (*Id.* at 15–18.) Plaintiff now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Notice of Mot. for J. on the Pleadings ("Pl.'s Mot."), ECF No. 46.) Plaintiff's motion is DENIED.

## I. FACTUAL BACKGROUND

### A. The Underlying Action.

This action arises from *Rodriguez v. Harrison Street Residences LLC, et al.*, Index No. 21650/2017E (N.Y. Sup. Ct. 2017) (the "Underlying Action"), a personal injury case brought by

Roberto Rodriguez, who was, at the time, an employee of Infinity Drywall Corp.[1] In that case, Rodriguez brought suit against various entities (including Defendants) for negligence and violations of New York Labor Law §§ 200, 240(1), and 241(6), relating to injuries he allegedly sustained while performing construction-related work within the scope of his employment. (Compl., ECF No. 1, at ¶¶ 1, 15.) On October 1, 2014, the date on which Rodriguez allegedly sustained these injuries, he was performing construction at 7 Harrison Street, New York, NY (the "Premises"). The Premises are owned by Defendant Harrison Street Residences, LLC. (*Id.* at ¶¶ 2–3.)

Prior to the date of the alleged incident, HSR entered into an agreement with Defendant Pav-Lak Contracting, Inc., wherein Pav-Lak agreed to act as the construction manager for the work performed at the Premises. (*Id.* at ¶ 3.) Subsequently, on September 26, 2012, Pav-Lak entered into a written agreement with PG Products of New York (doing business as PG Drywall) ("PG Drywall"), in which PG Drywall agreed to act as subcontractor for the project at the Premises. (*Id.* at ¶¶ 3, 17.) This agreement required, in relevant part, that PG Drywall "procure and maintain insurance . . . at its own expense, until completion and final acceptance of the work," and that Defendants "be included as additional insureds on all General Liability . . . and Excess Liability policies." (*Id.*, Ex. 2 (Trade Contractor Agreement), ECF No. 1-2, at 8–9.)

## B. The Primary CGL Insurance Policies.

The Defendants and PG Drywall obtained several different insurance policies for coverage on this project, including two primary commercial general liability ("CGL") policies. First, Colony Insurance Company ("Colony") issued a primary CGL policy to PG Drywall (the "Colony Policy"). This policy provided a $1 million each occurrence and $2 million aggregate

---

[1] It is unclear, based on the moving papers and the complaint, whether Roberto Rodriguez continues to be employed by Infinity Drywall Corp.

limit of liability and stipulated that it would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (*Id.*, Ex. 7 (Colony Policy), ECF No. 1-7, at 10–11.) Moreover, the Colony Policy provided in relevant part that the term "insured" refers to:

> any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured . . . only with respect to liability caused, in whole or in part, by your ongoing operations performed for that insured.

(*Id.* at 53.)

After Rodriguez brought the underlying action, both Defendants asserted indemnity from Colony as additional insureds under the Colony Policy. On May 19, 2017, Colony disclaimed coverage (1) of both defendants pursuant to its policy's limitation that it would provide coverage to additional insureds "only with respect to liability caused by" PG Drywall, because it determined that that PG Drywall was not responsible for causing the injury, and (2) of HSR for an additional reason, *i.e.*, because HSR had not entered into a written agreement with PG Drywall, it did not qualify as an additional insured pursuant to the requirements of the policy. (*See id.*, Ex. 8 (May 19, 2017 Colony Letter), ECF No. 1-8, at 4.) Colony reasserted its denial of coverage on October 3, 2017. (*See id.*, Ex. 9 (Oct. 3, 2017 Colony Letter), ECF No. 1-9, at 4–7.) Over two years later, on January 7, 2019, Colony agreed to defend Defendants subject to a reservation of its right to (1) withdraw from the defense, (2) seek a declaration that it has no obligation to Defendants, and (3) recover amounts paid. (*See* Pl.'s Mot., Ex. 13 (Jan. 7, 2019 Colony Letter), ECF No. 46-15.)

In addition to the Colony Policy, State National Insurance Policy ("State National") issued a primary CGL policy to Defendants (the "State National Policy"), which provided the insureds with $1 million coverage per occurrence and a $2 million general aggregate limit. Along with the

3

two primary CGL policies, Defendants obtained excess coverage under three separate insurance policies.

## C. The Excess Insurance Policies.

### 1. The Alterra Insurance Policy.

Alterra Insurance Company ("Alterra") issued the first excess policy to Defendants (the "Alterra Policy"). The Alterra Policy provides for a $5 million limit of liability in excess of the underlying $1 million, and would pay up to those limits for any amount in excess of the limits contained in the primary policy. (*Id.*, Ex. 4 (Alterra Policy), ECF No. 1-4, at 3.) The Alterra Policy follows the same conditions and limitations for additional insureds as outlined in the primary policy, and contains an endorsement outlining the requirements for coverage when any work is performed by a subcontractor:

> You, as a condition of this insurance, will require by written contract that all sub-contractors working on your behalf maintain primary insurance naming you as an additional insured, which insurance shall be evidenced by certificates of insurance maintained by you and shall include the following: . . . You are included as an additional insured and such insurance as is required by your contract, and reflected by the certificate shall be primary and not contribute with insurance provided by this policy; and ***shall contain terms, conditions, and coverages not more restrictive than this insurance in the context of any claims to which this insurance also applies***.

(*Id.* at 7–8 (emphasis added).) Indeed, the Alterra policy stated that its coverage would not apply to "bodily injury" arising out of any work performed by the insured's contractor or subcontractor, unless the above terms were met. (*Id.*)

On May 31, 2017, the Evanston Insurance Company ("Evanston"), successor in interest to Alterra by way of merger, sent a letter to HSR wherein it denied coverage under the Alterra Policy because, in part, Colony had denied coverage to HSR or Pav-Lak. (*Id.*, Ex. 10 (May 31, 2017 Evanston Letter), ECF No. 1-10, at 3, 5.) Further, Evanston stated that because Defendants "have failed to comply with the requirements of the above-cited Insurance Requirement

4

endorsement, [Evanston] must decline coverage for [the Underlying Action] under the Excess Liability Policy." (*Id.* at 5.) Evanston reserved its right "to adopt the coverage position taken by State National." (*Id.* at 3.)

### 2. The Admiral Insurance Policy.

The Admiral Insurance Company ("Admiral") issued the second excess policy, listing Pav-Lak, but not HSR, as an insured (the "Admiral Policy"). The Admiral Policy provides for a $5 million limit of liability in excess of the total underlying $6 million,[2] and would pay up to those limits for any amount in excess of the limits contained in the primary policy. According to the terms of the Admiral Policy, an "insured" is any individual or entity who qualifies as an insured under the underlying insurance (including the Alterra Policy), and follows the same requirements for additional insureds as outlined in the primary policy. (*Id.*, Ex. 5 (Admiral Policy), ECF No. 1-5, at 2, 14.)

On April 14, 2017, Admiral sent a letter to Pav-Lak wherein it agreed "to monitor this matter . . . subject to a full reservation of rights available to Admiral" under its excess liability policy, and specifically "reserve[d] its right to seek reimbursement from [Pav-Lak] . . . , or any other putative insured under the Admiral Policy, in connection with the Underlying Action." (*Id.*, Ex. 11 (Apr. 14, 2017 Admiral Letter), ECF No. 1-11, at 2, 6.)

### 3. The Evanston Insurance Policy.

Evanston issued the third excess policy to Defendants (the "Evanston Policy"). The Evanston Policy provides for a $10 million annual aggregate and attaches excess of "$10 million xs

---

[2] This figure takes into account both the primary policy from State National, as well as the Alterra excess policy limits, both of which Defendants' entitled coverage amount would need to exceed in order to reach the Admiral Insurance policy.

5

Primary" in addition to the total underlying $11 million,[3] and would pay up to those limits for any amount greater than the limits contained in the primary policy (including the Alterra and Admiral policies). The policy applies the same terms, definitions, conditions and exclusions of the Alterra and Admiral Excess Policies. (*Id.*, Ex. 6 (Evanston Policy), ECF No. 1-6, at 4, 7.)

On April 5, 2018, Evanston sent a letter to HSR wherein it stated that it would "monitor to the exhaustion of the underlying limits in connection with the defense and/or settlement of [the Underlying Action] under a full Reservation of Rights," and that it "reserve[d] the right to investigate this matter and disclaim coverage for any damages that are not covered under the policy referenced above." (*Id.*, Ex. 12 (Apr. 5, 2018 Evanston Letter), ECF No. 1-12, at 2.) Evanston added that because its policy "follows form to the Admiral Excess Policy" and the Admiral Policy "does not provide broader underlying coverage than that provided in the underlying insurance," any coverage restricted by either the Alterra Policy or the Admiral Policy would bar coverage under the Evanston Policy. (*Id.* at 4.)

## II.   LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995). The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6). *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

---

[3] This figure takes into account the primary policy from State National, the Alterra excess policy, and the Admiral excess policy limits, both of which Defendants' entitled coverage amount would need to exceed in order to reach the Evanston Insurance policy.

Accordingly, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing such a motion, a court may consider "the complaint, the answer [and] any written documents attached to them." *L-7 Designs*, 647 F.3d at 422 (citation and internal quotation marks omitted).

## III. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS IS DENIED

The purpose of obtaining excess liability insurance is that the issuing insurance company will pay, subject to the limitations provided in its policy, the excess of the amount covered by the primary or underlying insurance policy or policies. Notably, Plaintiff does not dispute this fact in either its papers or at oral argument. Here, Plaintiff seeks a declaratory judgment that it not be required to cover Defendants under its excess policies (*i.e.*, the Alterra and Evanston excess policies (the "Evanston Policies")), arguing that the Court should look solely to the precise language of the policies. Specifically, Plaintiff argues that the Colony Policy is more restrictive than the excess policies because the Colony Policy requires that "the putative additional insurance be in privity of contract with the Named Insured" and "the liability be caused in whole or in part by the Named Insured." (*See* Pl.'s Mot. at 15–16.) Plaintiffs claim that because the Alterra Policy contains a condition precedent, *i.e.*, that the terms of the underlying policy not be more restrictive than those of the excess policies, Defendants have breached their agreement. (*See id.*)

To support its claim that a declaratory judgment is appropriate in this case, Plaintiff argues that "[a] breach of a condition precedent to coverage entitles an insurer to disclaim coverage," (*id.* (citation omitted)) and "a condition precedent has to occur or the party has no obligation to perform the contract," (Tr. of Oral Arg. dated Dec. 12, 2019 at 41:25–42:2). Plaintiff's reliance on this doctrine, however, is misplaced. In focusing solely on the terms of the policies, Plaintiff disregards

7

the very real possibility that Colony may ultimately choose to ignore any limitations included in its contract and provide coverage to Defendants. In that situation, despite the language of the contract policies, the underlying insurance policy coverage would not be "more restrictive" than the Evanston policies because they would be imposing identical restrictions and providing identical coverage. Plaintiff's stance therefore appears to run contrary to the reasons that one would provide or obtain an excess policy, *i.e.*, to provide additional coverage for an incident already covered by an underlying insurance policy.

Plaintiff's motion is premature. It is improper, at this juncture, to fully absolve Plaintiff of *any* potential obligation to pay later in time because Plaintiff cannot yet demonstrate that the primary insurance policy has denied coverage to the Defendants *on the basis of the more restrictive terms*. Indeed, it is still possible that Colony will choose not to impose more restrictive conditions, in which case, the primary policy would not be applied in a manner that is "more restrictive" than the terms of the excess policies. It is also possible, as Defendants assert, that there is "sufficient coverage to resolve the claims of Roberto Rodriguez without implicating any of the excess coverage furnished by Evanston." (*See* Mem. of Law in Opp'n to Pl.'s Mot. for a J. on the Pleadings, ECF No. 51, at 17–18.)[4] In that case, Plaintiff would not be responsible to provide any coverage, regardless of how the primary policies apply the terms of their agreements.

Plaintiff chose to enter into excess coverage agreements with Defendants, presumably understanding the purpose of these policies, and it is not clear how Plaintiff would suffer if it is ultimately required to provide excess coverage for an incident if the underlying insurers do, in fact,

---

[4] Additionally, Defendants argue that they have met the definition of additional insureds under the Colony Policy, relying heavily upon the fact that Colony has agreed to defend Defendants pursuant to the terms of its policy. (*See id.* at 15.) Defendants also argue that the terms of the Alterra Policy are ambiguous, in that it is unclear whether the "not more restrictive" condition applies to the requirements imposed *to become* an insured, or *the coverage itself.* (*See id.* at 16–17.) Because this Court finds that Plaintiff's motion can be resolved without reaching these issues, it declines to analyze Defendants' arguments at this time.

8

provide coverage. Plaintiff, therefore, is not entitled to a declaratory judgment that it will *never* be required to provide coverage to Defendants.

## IV. CONCLUSION

Plaintiff's motion for judgment on the pleadings, (ECF No. 46), is DENIED. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York  
     March 30, 2020

SO ORDERED.

*George B. Daniels*  
GEORGE B. DANIELS  
United States District Judge